JENNER & BLOCK LLP
JULIE A. SHEPARD (SBN 175538)
JShepard@jenner.com
ANDREW G. SULLIVAN (SBN 301122)
AGSullivan@jenner.com
SATI HARUTYUNYAN (SBN 313138)
SHarutyunyan@jenner.com
EFFIONG K. DAMPHA (SBN 323554)
EDampha@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Telephone:   (213) 239-5100
Facsimile:   (213) 239-5199

GIANNI P. SERVODIDIO (*pro hac vice to be submitted*)
gps@jenner.com
919 Third Avenue
New York, NY 10022-3908
Telephone:  (212) 891-1600
Facsimile:   (212) 891-1699

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC.; AMAZON CONTENT SERVICES, LLC; DISNEY ENTERPRISES, INC.; PARAMOUNT PICTURES CORPORATION; WARNER BROS. ENTERTAINMENT INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL TELEVISION LLC; and UNIVERSAL CONTENT PRODUCTIONS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO GALINDO and DOES 1-20, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

1    Plaintiffs bring this Complaint against Alejandro Galindo ("Galindo") and

2    DOES 1-20 (collectively with Galindo, "Defendants") for direct and secondary

3    copyright infringement under the Copyright Act (17 U.S.C. § 101 *et seq.*).  This

4    Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17

5    U.S.C. § 501(b). Plaintiffs allege, on personal knowledge as to themselves and

6    information and belief as to others, as follows:

7                                    **INTRODUCTION**

8          1.    Defendants own and operate the infringing Internet Protocol television

9    ("IPTV") service commonly referred to as Nitro TV.  Defendants offer Nitro TV

10   subscription packages consisting of thousands of live and title-curated television

11   channels available twenty-four hours a day, seven days a week, throughout the

12   United States and abroad.  The channels available on Nitro TV include many of the

13   world's most popular television programs and motion pictures such as *The Office*,

14   *Spider-Man: Homecoming*, *Toy Story 3*, *Star Trek Beyond*, *Homecoming* and *Joker*,

15   including works whose copyrights Plaintiffs own or exclusively control

16   ("Copyrighted Works").  Plaintiffs and/or their affiliates have invested and continue

17   to invest substantial resources and effort each year to develop, produce, distribute,

18   and publicly perform their Copyrighted Works through legitimate market channels

19   that in aggregate create a content ecosystem that is safe and reliable for consumers.

20   Defendants' unlawful conduct in operating Nitro TV directly and willfully subverts

21   that ecosystem through pursuit of illicit profits from massive and blatant

22   infringement of Plaintiffs' Copyrighted Works.

23         2.    Upon paying Nitro TV's subscription fees, subscribers are provided

24   with credentials enabling access to an array of television channels, curated by

25   Defendants, via the web-based Nitro TV platform as well as the Nitro TV application

26   for use on mobile phones and smart TVs (collectively the "Nitro TV Platforms")

27   which Defendants control.  Through and in connection with these distribution outlets

28   and systems they devised, architected, and control, Defendants illegally reproduce

1  and publicly perform the Copyrighted Works in vast numbers without Plaintiffs'
2  authorization and facilitate, induce, and contribute to infringement of the
3  Copyrighted Works by others.

4      3.    Defendants' ongoing and massive infringement is willful.  Defendants
5  know they are violating Plaintiffs' rights to exploit the Copyrighted Works.  Indeed,
6  Defendants have actively selected the programming that they sell and stream
7  illegally to subscribers on Nitro TV Platforms, notified Nitro TV subscribers when
8  channels containing Plaintiffs' Copyrighted Works have been added, asked
9  subscribers for feedback regarding what television programs they would like
10 Defendants to add to Nitro TV's channel lineup, and apparently added television
11 shows in response to subscribers' feedback.  Further, Defendants continued to offer
12 their blatantly infringing service even after they became aware of a lawsuit against
13 a similarly infringing IPTV service "Set TV Now" and have also continued to offer
14 Nitro TV after the operators of the Set TV Now service were adjudicated to be
15 infringing Plaintiffs' copyrights and were enjoined.

16     4.    Defendants' knowledge that their acts are illegal is further confirmed
17 by Defendants' concerted efforts to hide their tracks and operate anonymously.  For
18 example, the primary Nitro TV website used to obtain credentials to access the Nitro
19 TV Platforms conceals registrant information from public access.  Likewise,
20 Defendants have not registered a Digital Millennium Copyright Act ("DMCA")
21 agent for any Nitro TV website they have operated.  Moreover, as described further
22 below, Galindo has advised Nitro TV subscribers on how to hide their locations from
23 detection when using the Nitro TV Platforms.

24     5.    On top of selling Nitro TV subscriptions directly to users, Defendants
25 have also developed an extensive and expanding web of Nitro TV resellers.  As
26 explained in more detail below, these resellers market and sell Defendants'
27 infringing Nitro TV service throughout the United States and around the world.  By
28

1  creating and cultivating their reseller program, Defendants have dramatically
2  increased their ill-gotten gains flowing from infringement.

3       6.    Defendants' entire business amounts to nothing more than a brazen,
4  large-scale copyright infringement operation, undertaken to maximize ill-gotten
5  profits for as long as possible.  Plaintiffs have brought this action to stop Defendants'
6  ongoing copyright infringement and to secure damages resulting from Defendants'
7  infringing conduct.

8  **JURISDICTION AND VENUE**

9       7.    This Court has subject matter jurisdiction over this Complaint pursuant
10  to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

11       8.    This Court has personal jurisdiction over Defendants. Defendants have:
12  transacted business within California; transacted business with California
13  companies, resellers, and consumers; committed the tortious act of copyright
14  infringement within California; and have caused tortious injuries within California
15  resulting from acts occurring outside California.

16       9.    Defendants operate the website TekkHosting.com (the "Website").
17  During the relevant time, Defendants have marketed and sold Nitro TV subscriptions
18  to end users in California as well as TekkHosting Nitro Reseller Credits (which are
19  exchanged for Nitro TV subscriber credentials) to resellers in California, via the
20  Website and other interactive websites, and have profited from the sale of the same.

21       10.    In furtherance of their infringement, Defendants do business with
22  California-based companies, including but not limited to (a) Cloudflare, Inc., a
23  company that provides content delivery and domain name services and is
24  headquartered in San Francisco, California; and (b) Facebook, which is
25  headquartered in Menlo Park, California and which Defendants have used to
26  advertise and promote Nitro TV subscriptions and to build the Nitro TV reseller
27  network.

28

11.     Defendants' unauthorized exploitation of the Copyrighted Works has caused harm to Plaintiffs in California.  Defendants reasonably expected or should have reasonably expected their acts to cause harm in California because Plaintiffs maintain either headquarters or offices in California, and it is the location of a significant portion of Plaintiffs' production and distribution operations.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## THE PARTIES

13.     Plaintiff Columbia Pictures Industries, Inc. ("Columbia") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California.  Columbia owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

14.     Plaintiff Amazon Content Services, LLC ("Amazon") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Seattle, Washington.  Amazon owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

15.     Plaintiff Disney Enterprises, Inc. ("Disney") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Disney owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

16.     Plaintiff Paramount Pictures Corporation ("Paramount") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Paramount owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

17.     Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros.") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Warner Bros. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

18.   Plaintiff Universal City Studios Productions LLLP ("UCSP") is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  UCSP owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

19.   Plaintiff Universal Television LLC (formerly known as NBC Studios LLC) ("UT") is a limited liability company duly organized under the laws of the State of New York with its principal places of business in Universal City, California and New York, New York.  UT owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

20.   Plaintiff Universal Content Productions LLC (formerly known as Universal Cable Productions LLC and Universal Network Television, LLC) ("UCP") is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  UCP owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

21.   Plaintiffs have obtained Certificates of Copyright Registration for their Copyrighted Works.  **Exhibit A** contains a representative list of titles, along with their registration numbers, as to which Defendants have directly and secondarily infringed, and continue to do so.

22.   Defendant Alejandro Galindo ("Galindo") resides in or around Dickinson, Texas.

23.   Plaintiffs do not presently know the true names of the DOE defendants. Plaintiffs are informed and believe, and on the basis of that information allege, that each of the DOE defendants was in some manner proximately responsible for the events alleged in this Complaint and for the injuries and damages alleged herein. Plaintiffs will amend this Complaint to assert the true names and/or capacities of the DOE defendants when their names are ascertained.

# BACKGROUND FACTS

**Plaintiffs and Their Copyrighted Works**

24.     Plaintiffs and/or their affiliates produce and distribute a significant portion of the world's most sought-after, critically acclaimed, and award-winning television programs and motion pictures.

25.     They also own or hold the exclusive U.S. rights (among others) to reproduce, distribute, and publicly perform the Copyrighted Works, including by means of streaming those works over the Internet to the public.

26.     Plaintiffs, either directly or indirectly through their affiliates, authorize the legitimate distribution and public performance of the Copyrighted Works in various formats and through multiple distribution channels, including, by way of example: (a) through cable and direct-to-home satellite services (including basic, premium, and "pay-per-view"); (b) through authorized, licensed Internet video-on-demand ("VOD") services, including those operated by Amazon, iTunes, Google Play, Disney+, and VUDU; (c) through authorized, licensed Internet or over-the-top ("OTT") streaming services, including those offered by Hulu TV, Fubo TV, Sling TV, YouTube TV, and others; (d) for private home viewing on DVD, Blu-ray, and UHD discs; (e) for exhibition in theaters; and (f) for broadcast television.

**Defendants' Direct and Secondary Infringement of Plaintiffs' Copyrighted Works**

27.     Plaintiffs' Copyrighted Works have been and are being streamed live to Nitro TV subscribers, as well as being provided on an on-demand basis, via the Nitro TV Platforms without Plaintiffs' authorization. The Nitro TV Platforms—which compete with and undermine authorized cable and Internet on demand services—are available on a subscription basis and are controlled by Defendants, who profit from the sale of subscriptions to the Nitro TV Platforms.

28.     To market and promote the Nitro TV Platforms, Defendant Galindo created         the         NITROTV         Official         Facebook         group,

7

1  www.facebook.com/groups/Nitroiptv/ ("Nitro TV Facebook Group").   As the

2  creator and an administrator of the Nitro TV Facebook Group, Galindo used it to

3  market and promote Nitro TV subscriptions, to induce, encourage, and facilitate

4  infringement, and to expand Defendants' web of Nitro TV subscription resellers.

5  Among other things, as reflected in the screen shot below, Defendants used this

6  Facebook group platform to inform subscribers of Nitro TV's new channels and

7  program offerings, to provide subscribers with updates about the Nitro TV

8  Platforms, and to invite subscribers to post on the Nitro TV Facebook Group page

9  the TV shows they wanted added to Nitro TV.

10

11  **Alex Galindo** shared a link.
   ● Admin · October 8, 2017

12

13  Refresh or restart your app. You will see Urban and Family Movies
   categories now un VOD. We have now started to add TV series and

14  started with Game of Thrones all of Game of Thrones seasons are
   avaialble in VOD in **1080p** Please post here TV shows you want next

15  so that we can get an idea which ones to add next. Will leave
   comments open for this. Any issues or help request still need to be

16  submitted via ticket through

17  **Client Area - TekkHosting**

18  TEKKHOSTING.COM

19  👍 Like

20  ❤️ 22

21

22      29.   Defendants have added title-curated television channels to Nitro TV's

23  channel lineup apparently in response to subscribers' responses to requests for their

24  feedback.

25

26  \\

27

28  \\

30.   Defendants even used the Nitro TV Facebook Group as a vehicle to advise Nitro TV subscribers how to hide infringing activity. For example, as reflected below, Galindo advised users to use a VPN, which would mask the users' unique IP address and location and enable access to restricted content:



31.   Defendants use their Website, TekkHosting.com, as their primary interface through which users may receive access credentials to the infringing service. To obtain credentials allowing access to the programs via the unauthorized Nitro TV Platforms, a subscriber must either (a) purchase a subscription through the Website or other website controlled by Defendants or (b) purchase a subscription

through a Nitro TV reseller who has purchased TekkHosting Nitro Reseller Credits on the Website or through other means controlled by Defendants such as nitroiptv.com.

32.   Nitro TV subscriptions typically sell for $20 per month for two devices. Upon paying the monthly subscription fee, a new subscriber receives an email within approximately 24 hours providing the necessary Nitro TV credentials and a link to the Nitro TV application (the "App") for the subscriber to download onto one or more devices (e.g., laptop or Android phone).

33.   Upon downloading the App and launching one of the Nitro TV Platforms with their subscriber credentials, Nitro TV subscribers have been greeted by the message: "Enjoy the best television channels with the best IPTV App!"

34.   Defendants prompt Nitro TV subscribers go to Live TV or view their TV Guide:



\\

\\

\\

\\

35.    Upon selecting Live TV, Nitro TV subscribers are provided with a collection of television programming curated by Defendants.  The sheer volume of channels that Defendants have captured to provide on the Nitro TV Platforms requires organization by category or genre (e.g., Entertainment, Network, News, Sports, Kids, 24/7) as depicted in the screenshot below:



36.    Defendants offer thousands of live television channels.  The live television channel offerings are streamed contemporaneously with the original source of the telecast.  In other words, the television program airing on a television channel (e.g., FX, the Disney Channel, Paramount Network) through an authorized source (e.g., a cable operator, satellite TV provider) is available on the Nitro TV Platforms at the same time.  Many of these television channels include the Copyrighted Works.

37.    Upon clicking on one of the live television program offerings, the Nitro TV system assembled, operated, controlled, and managed by Defendants transmits the television program, including Plaintiffs' Copyrighted Works, to the Nitro TV subscriber.  Initially the television program will appear in a window on the right of

the viewing device.  With the click of a button, the program may be maximized to fill the entire screen.

38.     Below are screenshots depicting just a couple of Plaintiffs' Copyrighted Works streamed by Defendants:





39.    Reflecting their targeting of California subscribers, Defendants obtain and include on Nitro TV Platforms a collection of broadcast television networks throughout California such as the Los Angeles ABC, CBS, CW, NBC and FOX networks reflected below:



40.    Defendants also offer a VOD service on the Nitro TV Platforms in the form of Nitro TV's "Catch Up" feature. When a Nitro TV subscriber selects the "Catch Up" option (which is displayed in the lower right hand corner of the screenshot of Nitro TV in Paragraph 34, above), they are offered television programming from the prior two days. For example, a Nitro TV subscriber using this feature on a Monday would be shown a guide of what aired on Sunday and Saturday, and may select and watch a program that was telecast at a specific time and on a specific channel (e.g., Disney Channel, Paramount Network) during the prior two days. This type of VOD service is only possible by copying the programming.

41.    In addition to the collection of live television channels that Defendants have amassed, Defendants offer "24/7," title-curated channels devoted to a single television series, motion picture, or franchise. By way of example, the 24/7 channel

dedicated to Season 1 of *Peaky Blinders* streams the episodes from Season 1 of that series in order. Similarly, the 24/7 channel dedicated to Marvel's *Captain America: The Winter Soldier* streams that single movie repeatedly, as reflected from the screenshots below:





42.  Defendants offer some of Plaintiffs' most popular Copyrighted Works through these 24/7 channels, such as *Friends*, *Fleabag*, *Spider-Man* motion pictures, and *The Mentalist*. To create and offer such channels, Plaintiffs' Copyrighted Works have been reproduced and then assembled in a continuous loop for the purpose of

1 transmitting them nonstop to Nitro TV subscribers via the Nitro TV Platform—all
2 without Plaintiffs' authorization.

3     43.    As noted above, to expand Nitro TV's subscriber base and their ill-
4 gotten profits, Defendants developed and operate a Nitro TV reseller program,
5 creating an extensive and expanding network of Nitro TV resellers. Defendants have
6 dramatically increased their profits from infringement by selling TekkHosting Nitro
7 Reseller Credits to resellers for credentials to access Nitro TV. In turn, Defendants'
8 network of resellers market and promote Nitro TV to attract new subscribers to the
9 illegal Nitro TV service. When a reseller sells a Nitro TV subscription, access
10 credentials are provided to the Nitro TV Platforms in exchange for debiting the
11 reseller's credits.

12     44.    Volume discounts incentivize resellers to buy large quantities of credits
13 and boost their subscription sales. For example, as reflected in the screenshot on the
14 next page, a reseller buying 20 credits would pay $10 per credit, while a reseller
15 purchasing 1,000 credits would pay less than $5 per credit. As a reseller typically
16 sells Nitro TV subscriptions for $20 per month, a high-volume reseller will keep
17 more from each subscription that it sells. Defendants, in turn, gain a larger number
18 of subscribers paying them monthly fees for Defendants' infringing service.

19 \\
21 \\
23 \\
25 \\
27 \\



View Cart
Home
Store
Announcements
Knowledgebase
Network Status
Contact Us
Account
Choose your package
15 TekkHosting Nitro Reseller Credits
$165.00 USD One Time
Order Now
This is for First time Re-sellers to Sign up and become a Re-seller. This includes 15 Credits
20 TekkHosting Nitro Reseller Credits
$200.00 USD One Time
Order Now
20 TekkHosting Nitro Reseller Credits (New or Existing Resellers)
30 TekkHosting Nitro Reseller Credits
$290.00 USD One Time
Order Now
30 TekkHosting Nitro Reseller Credits
50 TekkHosting Nitro Reseller Credits
$425.00 USD One Time
Order Now
50 TekkHosting Nitro Reseller Credits
100 TekkHosting Nitro Reseller Credits
$800.00 USD One Time
Order Now
100 TekkHosting Nitro Reseller Credits
200 TekkHosting Nitro Reseller Credits
$1180.00 USD One Time
Order Now
200 TekkHosting Nitro Reseller Credits
500 TekkHosting Nitro Reseller Credits
$2450.00 USD One Time
Order Now
500 TekkHosting Nitro Reseller Credits
TekkHosting Nitro Resellers 1,000 TekkHosting Nitro Reseller Credits
$4600.00 USD One Time
Order Now
1000 TekkHosting Nitro Reseller Credits
Existing Reseller Credit Refill 15 credits
$165.00 USD One Time
Order Now

500 TekkHosting Nitro Reseller Credits
$2450.00 USD One Time
Order Now
TekkHosting Nitro Resellers 1,000 TekkHosting Nitro Reseller Credits
$4600.00 USD One Time
Order Now
Existing Reseller Credit Refill 15 credits
$165.00 USD One Time
Order Now
Existing Reseller Credit Refill 20 Credits
$200.00 USD One Time
Order Now
Existing Reseller Credit Refill 30 credits
$290.00 USD One Time
Order Now
Existing Reseller Credit Refill 50 credits
$410.00 USD One Time
Order Now
Existing Reseller Credit Refill 100 Credits
$700.00 USD One Time
Order Now
Existing Reseller Credit Refill 200 Credits
$1125.00 USD One Time
Order Now
Existing Reseller Credit Refill 500 Credits
$2200.00 USD One Time
Order Now

45.    The reseller program plays a pivotal role in Defendants' illegal commercial enterprise.  Defendants' web of resellers promotes Nitro TV as a substitute for authorized and licensed distributors (e.g., cable television providers, OTT streaming services).  For example, Nitro TV is marketed as "simply the best and most reliable streaming service on the market, featuring over 2,500 HD streams."  Nitro TV marketing also promotes that subscribers can access "NFL, NHL, MLB, NBA, Soccer, UFC & PPV," "24/7 Channels & Premium Movies," "US Regionals," and "Fitness, Music, Latino, Spanish, and more!"  And Nitro TV offers "many different subscriptions for you and your household to enjoy."

46.    The sheer breadth of Defendants' illegal IPTV operation and the harm to Plaintiffs is apparent.  One of Defendants' resellers recently boasted about the success of his resell efforts:  "Over 45,000 customers activated in the last 12 months."  That is just one Nitro TV reseller.  There are scores of them.

**Immediate and Irreparable Harm Threatened by Defendants' Mass Infringement**

47.    The scope of Defendants' infringement of Plaintiffs' Copyrighted Works is massive.  Nitro TV is operating twenty-four hours a day, seven days a week throughout the United States and abroad, infringing Plaintiffs' Copyrighted Works in vast numbers on a daily basis.

48.    Plaintiffs exercise their exclusive rights to license distributors and downstream services to develop and grow markets for their copyrighted content, particularly the emerging digital markets.  Defendants' conduct usurps Plaintiffs' control over the exercise of these exclusive rights, interfering with those distribution strategies.

49.    Defendants illegally and unfairly compete with live TV streaming service providers who pay for permission to retransmit broadcast television, offering live Internet TV while refusing to pay for the commercially bargained-for licenses that the law requires.  As such, Defendants also interfere with Plaintiffs' existing

relationships with legitimate online services. These legitimate services negotiate their licenses and abide by contractual restrictions. Defendants need not honor such contractual restrictions because they circumvent the licensing process altogether. This unfair competition undermines the legitimate market for content streamed over the Internet, which is a robust and growing part of Plaintiffs' businesses and an important option to many consumers.

50.     Defendants are also contributing to consumer confusion regarding what is lawful and what is not by misleading customers to believe that the Nitro TV service is also legitimate. In this way, Nitro TV subscribers and potential subscribers may mistakenly view Nitro TV as a legal and sanctioned alternative to authorized distribution outlets and licensees, when it is not. This harms the market for legitimate services by drawing users away from Plaintiffs' legitimate licensees.

51.     For these reasons, Plaintiffs bring this action to protect their rights and end Defendants' wrongs.

<div align="center">

**FIRST CAUSE OF ACTION**

**(Direct Copyright Infringement)**

</div>

52.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 51 inclusive.

53.     Under Section 106 of the Copyright Action, Plaintiffs own the exclusive right to, among other things, make public performances of and reproduce their Copyrighted Works.

54.     Plaintiffs have never authorized Defendants to publicly perform or reproduce their Copyrighted Works.

55.     Defendants have infringed and continue to directly infringe thousands of Plaintiffs' Copyrighted Works by violating Plaintiffs' exclusive rights to make public performances of and reproduce the Copyrighted Works. Defendants, without permission or consent of Plaintiffs, have (a) publicly performed and will continue to publicly perform Plaintiffs' Copyrighted Works, including but not limited to those

<div align="center">

18

</div>

worked listed on Exhibit A hereto, by transmitting them over the Internet to Nitro TV subscribers; (b) reproduced and will continue to reproduce the Copyright Works in connection offering the "Catch Up" VOD service described above and creating 24/7 channels; and (c) reproduced the Copyright Works in connection with offering other VOD services and the existing 24/7 channels.

56.     Defendants' acts of infringement are willful, in disregard of and with indifference to Plaintiffs' rights.

57.     As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

58.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

59.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

60.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

## (Contributory Copyright Infringement by Knowingly and Materially
## Contributing to the Infringement of the Copyrighted Works)

61.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 60 inclusive.

62.     To the extent Defendants claim that it is third parties, not Defendants, who are violating Plaintiffs' exclusive public performance and reproduction rights under the Copyright Act, Defendants are knowingly and materially contributing to such infringement. Defendants have actual knowledge of the third parties' infringement. Defendants systematically amassed from these third parties thousands of channels, many of which include Plaintiffs' Copyrighted Works consisting of some of the most sought after, valuable television programs and motion pictures in existence. Defendants sell access to this vast array of channels on Nitro TV without authorization for $20 per month—a figure so incongruous with market rates that it shows that Defendants necessarily know, or are deliberately and willfully blind to the fact, that third parties are infringing Plaintiffs' copyrights by transmitting them without authorization. Indeed, Defendants' knowledge of ongoing infringement is clear. Defendants are cloaking and anonymizing their actions and their Website because they know what they—and the third parties—are doing is illegal.  Galindo has also advised Nitro TV subscribers on how to hide their locations from detection when using the Nitro TV Platforms.

63.     Defendants materially contribute to such infringement. Defendants configure and promote the use of the Nitro TV Platform to connect subscribers to unauthorized online sources streaming Plaintiffs' Copyrighted Works. The operators of these repositories or others operating in concert with them, control facilities and equipment used to store and transmit Plaintiffs' Copyrighted Works and cause the content to be transmitted upon requests made via the Nitro TV Platforms to Nitro TV subscribers.  The operators of these repositories, or others operating in concert with them directly, infringe Plaintiffs' exclusive reproduction and public performance rights by copying and publicly performing the Copyrighted Works without Plaintiffs' authorization.

64.     Defendants knowingly and materially contribute to aforementioned infringement by operating the Website and supplying the Nitro TV Platforms that

facilitate, encourage, and enable such direct infringement, and by actively encouraging, promoting and contributing to the use of Defendants' products and services for such copyright infringement.

65.   Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each of the Copyrighted Works constitutes a separate and distinct act of infringement.

66.   Defendants' knowing and material contribution to the infringement of the Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

67.   As a direct and proximate result of the infringement by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

68.   Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

69.   Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

70.   As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## THIRD CAUSE OF ACTION

### (Intentionally Inducing the Infringement of the Copyrighted Works)

71.   Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 70 inclusive.

72.     Defendants intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to reproduce and publicly perform their works.

73.     To the extent Defendants may claim that others are exercising Plaintiffs' exclusive public performance and reproduction rights under the Copyright Act, Defendants induce such infringement by supplying and promoting the use of the Nitro TV Platforms to connect customers to unauthorized online sources that stream Plaintiffs' copyrighted works, and by actively inducing, encouraging, and promoting the use of Nitro TV for copyright infringement.

74.     Defendants' intentional inducement of the infringement of Plaintiffs' rights in each of the Copyrighted Works constitutes a separate and distinct act of infringement.

75.     Defendants' inducement of the infringement of the Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

76.     As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

77.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

78.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

79.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights

in the Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and for the following relief:

1. For preliminary and permanent injunctions (a) enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them, from publicly performing, reproducing, distributing or otherwise infringing in any manner (including without limitation by materially contributing to or intentionally inducing the infringement of) any right under copyright in any of the Copyrighted Works, including without limitation by publicly performing or reproducing those Works, or by distributing any software or providing any service or device that does or facilitates any of the foregoing acts; and (b) impounding hardware in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to Defendants' direct and secondary infringement of the Copyrighted Works.

2. For entry of a preliminary injunction enjoining Namecheap, Inc. and Domain.com LLC, the respective domain name registrars for the TekkHosting.com and NitroIPTV.com domain names ("Infringing Domain Names"), as well as all others who receive notice of the Court's order, from allowing the Infringing Domain Names to be modified, sold, transferred to another owner, or deleted. Such entities are further ordered to disable access to the Infringing Domain Names.  As part of accomplishing this, these entities shall take the following steps:

a. Maintain unchanged the WHOIS or similar contact and identifying information as of the time of receipt of this Order and maintain the Infringing Domain Names with the current registrar;

b. Immediately change the authoritative name-servers for the Infringing Domain Names to name-servers controlled by Plaintiffs pending further direction from this Court, the effect of which would be to make the Infringing Domain Names inaccessible during this period;

c. Prevent transfer of the Infringing Domain Names and any further modification of any aspect of the domain registration records of the Infringing Domain Names by Defendants or third parties at the registrar or by other means; and

d. Preserve all evidence that may be used to identify the entities using the Infringing Domain Names.

3. For entry of an order requiring Namecheap, Inc. and Domain.com LLC, the respective domain name registrars for the Infringing Domain Names, as well as all others who receive notice of the court's order, to transfer these domain names and any additional domain names found to be associated with Defendants' operation of Nitro TV to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names, or the name(s) of their designee(s), and under Plaintiffs' ownership.

4. For Plaintiffs' damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

5. For an accounting, the imposition of a constructive trust, restitution of Defendants' unlawful proceeds from copyright infringement, and damages according to proof.

6. For a declaration that Defendants' activities as alleged herein constitute direct and secondary copyright infringement of Plaintiffs' exclusive rights under copyright in violation of 17 U.S.C. § 106.

7. For prejudgment interest according to law.

8.   For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

9.   For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.


**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues triable by jury.


Dated:  April 3, 2020                          JENNER & BLOCK LLP


By: _____
          Julie Shepard
          *Attorneys for Plaintiffs*

2978278